UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LEIHINAHINA SULLIVAN,<br><br>          Plaintiff,<br><br>     vs.<br><br>FEDERAL BUREAU OF PRISONS,<br>UNITED STATES ATTORNEY DISTRICT<br>OF HAWAII,<br><br>          Defendants. | CIV. NO. 20-00269 LEK-KJM |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court are: pro se Plaintiff Leihinahina Sullivan's ("Plaintiff") Motion for Summary Judgment as There Is No Dispute of Material Facts Viewed in Light Most Favorable to Non-Moving Party, Defendants ("Plaintiff's Motion"), filed on May 26, 2021; and Defendants Federal Bureau of Prisons ("BOP") and United States Attorney District of Hawaii's ("U.S. Attorney's Office" and collectively "Defendants") Counter-Motion for Summary Judgment ("Defendants' Motion"), filed on June 10, 2021. [Dkt. nos. 45, 47.[1]] On June 21, 2021, Plaintiff filed her opposition to the Defendants' Motion ("Plaintiff's Reply"). [Dkt. no. 50.] The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the

---

[1] Docket number 47 was both Defendants' opposition to Plaintiff's Motion and Defendants' Motion.

Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). For the reasons set forth below, summary judgment is granted in favor of Defendants and against Plaintiff.

## BACKGROUND

On December 26, 2019, Plaintiff was charged in a sixty-count indictment with: wire and mail fraud, in violation of 18 U.S.C. §§ 1343 and 1341; false claims, in violation of 18 U.S.C. § 287; aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); money laundering, in violation of 18 U.S.C. § 1956; obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); and Hobbs Act Extortion, in violation of 18 U.S.C. § 1951. [United States v. Sullivan, CR 17-00104 JMS-KJM ("CR 17-104"), Fourth Superseding Indictment, filed 12/26/19 (dkt. no. 495).] On May 21, 2020, Plaintiff filed a motion seeking release from Honolulu Federal Detention Center ("FDC") to home confinement ("5/21/20 Motion"). [CR 17-104, 5/21/20 Motion (dkt. no. 895).] The 5/21/20 Motion was based, in part, on Plaintiff's claim that her medical conditions, such as asthma, anxiety, and depression, were worsening. [Id. at 2.] On June 17, 2020, the 5/21/20 Motion was granted. [CR 17-104, Minutes, filed 6/17/20 (dkt. no. 934).] On July 20, 2021, Plaintiff pled guilty to three of the counts in the Fourth Superseding Indictment, and one count of the information in

United States v. Sullivan, CR 21-00096 JMS.  [CR 17-104, Minutes, filed 7/20/21 (dkt. no. 1202), at 2.]  On July 29, 2021, Plaintiff filed a motion for leave to withdraw her guilty plea, which is currently pending.  See CR 17-104, Motion for Leave to Withdraw My Plea as a Violation of My United States Constitutional Rights Amendments One, Fourth, Fifth, Sixth, Fourteenth; Breach of Contract; Prosecutorial Misconduct; Federal Rules of Criminal Procedure Rule 11, filed 7/29/21 (dkt. no. 1210).

      The operative pleading in the instant case is the Second Amended Complaint, filed on December 7, 2020.  [Dkt. no. 25.]  The parties are familiar with the underlying allegations, and they will only be repeated here as necessary.  See Order Denying Defendants' Motion to Dismiss the Second Amended Complaint, Filed 12/21/20 [Dkt. No. 28], filed 4/19/21 (dkt. no. 38) ("4/19/21 Order").  In sum, Plaintiff alleges the Defendants violated the Privacy Act, as codified at 5 U.S.C. § 552a, when the BOP shared, transmitted, or disclosed the information contained within 177 pages of her BOP healthcare records with the U.S. Attorney's Office without authorization or Plaintiff's consent, which deprived her of her right to a fair trial in CR 17-104.  [Second Amended Complaint at ¶¶ 9, 16.]  She alleges the following claims: 1) violation of § 552a(b) and (g)(1)(D), based on the BOP's disclosure of her medical and

3

psychiatric records to the U.S. Attorney's Office ("Count I"); [id. at ¶¶ 96-102;] and 2) violation of Plaintiff's Fourth and Fourteenth Amendment rights for the same conduct ("Count II"), [id. at ¶¶ 103-07].  She requests: actual damages, pursuant to § 552a(g)(4)(A); reasonable attorneys' fees and costs; monetary damages for Count II; and any other appropriate relief.  [Id. at pgs. 42-43.]

In Plaintiff's Motion, she argues Defendants violated her rights under the Privacy Act, the Fourth Amendment, and the Fourteenth Amendment because the disclosure did not fall under any exception to the Privacy Act's prohibition on disclosure of confidential medical and psychiatric information.  [Pltf.'s Motion at 2-3.]  Plaintiff also seeks an injunction for Defendants to cease sharing her medical and psychiatric information without first obtaining a subpoena, court order, or informed consent.  [Id. at 4.]

Defendants argue the BOP is entitled to summary judgment because the BOP was authorized to share Plaintiff's medical information under the need to know exception and the routine use exception to the Privacy Act.  [Defs.' Motion at 8-11.]  They also argue the U.S. Attorney's Office is entitled to summary judgment because neither the U.S. Attorney's Office's use nor receipt of Plaintiff's medical information violates the Privacy Act.  [Id. at 11-14.]  They also argue Defendants are

4

both entitled to summary judgment because Plaintiff cannot establish damages or a willful violation of the Privacy Act, [id. at 14-16,] and Plaintiff's claims are barred by sovereign immunity, [id. at 16.]  Finally, they ask that Plaintiff's request for injunctive relief be denied.  [Id. at 17-18.]

## DISCUSSION

Plaintiff is proceeding pro se, and therefore her filings are liberally construed.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

### I. Privacy Act Claims

Section 552a(b) provides in relevant part:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
>
> > (1)  to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;
> >
> > . . . .
> >
> > (3)  for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section[.[2]]

---

[2] Section 552a(e)(4) requires each agency that maintains records to publish in the Federal Register, *inter alia*, "(D) each routine use of the records contained in the system, including the categories of users and the purpose of such use."

5

"A successful claim under the Privacy Act requires a showing 1) the agency disclosed information contained within a system of records; 2) the disclosure was improper; 3) the disclosure was intentional or willful, and 4) the plaintiff was adversely affected by the disclosure." Tungjunyatham v. Johanns, 500 F. App'x 686, 689 (9th Cir. 2012) (citing Swenson v. U.S. Postal Service, 890 F.2d 1075, 1077 (9th Cir. 1989)). With respect to recourse, the Privacy Act provides that:

> Whenever any agency
>
> . . . .
>
> > (D)  fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
>
> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

Section 552a(g)(1). Further,

> [i]n any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> > (A)  actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

>> (B) the costs of the action together with reasonable attorney fees as determined by the court.

Section 552a(g)(4).

There is no dispute that the BOP transmitted Plaintiff's medical records to the U.S. Attorney's Office. See Defs.' Concise Statement of Material Facts in Supp. of Defs.' Opp. to Pltf.'s Motion for Summary Judgment and Injunction [ECF No. 45] and Defs.' Counter-Motion for Summary Judgment ("Defs.' CSOF"), filed 6/10/21 (dkt. no. 48), Decl. of Rebecca Perlmutter ("Perlmutter Decl.") at ¶¶ 6-7.  Because there are no genuine issues of material fact, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As a threshold issue, Plaintiff waived whatever privacy interest she had in the relevant medical records to the extent she claimed her asthma, depression and anxiety warranted her release from detention to home confinement.  See CR 17-104, 5/21/20 Motion at 5 (arguing Plaintiff's declining health and need to prepare for trial, as well as some untimely discovery, justified her transfer to home confinement); Seaton v. Mayberg, 610 F.3d 530, 534-35 (9th Cir. 2010) (holding that "prisoners do not have a constitutionally protected expectation of privacy in

7

prison treatment records when the [government] has a legitimate penological interest in access to them," at least in part because "[p]risons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts"). The BOP and the U.S. Attorney's Office need for her medical records falls under the need to manage rehabilitative efforts, in the sense they were required to respond to Plaintiff's claim that her declining health, among other factors, required her release to home confinement. Accord Thomas v. Carrasco, No. 1:04-cv-05793-MJS (PC), 2010 WL 4024930, at *4 (E.D. Cal. Oct. 13, 2010) ("to the extent an individual has a right to privacy in his medical records, such right is waived by the filing of a lawsuit that puts the individual's medical condition at issue"), aff'd, 474 F. App'x 692 (9th Cir. 2012). In light of Plaintiff's waiver, the Court turns to the first statutory exception to the Privacy Act.

### A. The Need-to-Know Exception

Plaintiff argues the need-to-know exception to the Privacy Act's general prohibition on disclosure, as contained in § 552a(b)(1), does not apply because the Assistant United States Attorney who requested and received Plaintiff's medical records from the BOP was not a BOP employee, and therefore the disclosure was not "intra-agency." [Pltf.'s Motion at 2.]

However, the Privacy Act at § 552a(a)(1), defines the term "agency" by reference to 5 U.S.C. § 552(e), and § 552(f)(1) provides that, for purposes of § 552, "agency" . . . includes any **executive department**, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  (Emphasis added.)

Both the BOP and U.S. Attorney's Office are components of the Department of Justice, which is led by the United States Attorney General.  See generally The United States Department of Justice, Organizational Chart, www.justice.gov/agencies/chart (last visited Aug. 7, 2021).  Therefore, the agency in question is the Department of Justice, and the transmission of records from the BOP to the U.S. Attorney's Office was intra-agency. Accord Williams v. Reilly, 743 F. Supp. 168, 175 (S.D.N.Y. 1990) (stating, in the Privacy Act analysis, that the Defense Logistics Agency and the Navel Investigation Service (which are within the Department of the Navy) "are considered components of one agency, the Department of Defense").  Interpreting "agency" as meaning the Department of Justice is in congruence with the statutory language of § 552(f)(1) and with common sense, in that the BOP and the U.S. Attorney's Office work together under the leadership of the Attorney General as components of a single law

enforcement agency, the Department of Justice, and judicially creating artificial division among components of the Department of Justice would serve no reasonable purpose. Therefore, Plaintiff's argument that the disclosure was not intra-agency is rejected.

The second clause of § 552a(b)(1) limits disclosure "to those officers and employees of the agency which maintains the record **who have a need for the record in the performance of their duties**." (Emphasis added.) Plaintiff does not argue that the Assistant United States Attorney who requested and received the medical records did not have a need for said records. See generally Pltf.'s Motion. However, the issue will be addressed briefly in the interest of completeness and the Court's obligation to construe Plaintiff's filings liberally.

Plaintiff caused the U.S. Attorney's Office to obtain the records because Plaintiff put her health at issue in the 5/21/20 Motion by claiming her declining health as a basis for release to home confinement. Therefore, the second clause of § 552a(b)(1) is satisfied. To conclude otherwise would be to allow a criminal defendant to claim failing health a basis for release from detention, then to prohibit the necessary responsive inquiry into such claims out of respect for the privacy of matters that the defendant chose to expose to the world.

In sum, the transmission of Plaintiff's records falls under the § 552a(b)(1) exception to the Privacy Act.

**B**     **Routine Use Exception**

In the context of § 552a(b)(3), "routine use" is defined in § 552a(a)(7), which states, "the term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected."  See § 552a(a)(7).  The statute requires that "each routine use of the records contained in the system, including the categories of users and the purpose of such use" be published in the Federal Register as part of "notice of the existence and character of the system of records."  § 552a(e)(4)(D).  To satisfy the routine use exception,

> [f]irst, the government ha[s] to show that disclosure was within the scope of an agency's routine use regulations as published in the Federal Register.  Second, the government ha[s] to show that disclosure of the record must be for a purpose which is compatible with the purpose for which the record was collected.

Covert v. Harrington, 876 F.2d 751, 754 (9th Cir. 1989).

The relevant statement in the Federal Register provides that medical and mental health information are among the categories of information the BOP will disclose "[t]o federal, state, local, foreign and international law enforcement agencies and officials for law enforcement purposes such as

11

investigations, possible criminal prosecutions, civil court actions, or regulatory proceedings." Privacy Act of 1974; System of Records, 67 Fed. Reg. 11712-01, 11713 (2002). Therefore, the transmission of Plaintiff's records from BOP to the U.S. Attorney's Office was within the scope of the BOP's routine use as a disclosure to law enforcement for investigation or prosecution purposes, as published in the Federal Register, satisfying the first prong of the routine use analysis. Second, disclosure for the purpose of investigating and litigating Plaintiff's claim that her deteriorating medical conditions warranted her release to home confinement is compatible with the purpose of collecting medical records, where, as here, **Plaintiff chose to litigate issues related to her health**.

Plaintiff's Second Amended Complaint also contains allegations that the U.S. Attorney's Office disclosed Plaintiff's medical records when the Assistant United States Attorney discussed the records in a filing, and when the records were filed with the district court under seal. [Second Amended Complaint at ¶¶ 45-47 (citing CR 17-104, Government's Response to Defendant's Motion Re: Home Confinement, ECF No. 895, filed 5/28/20 (dkt. no. 909) ("5/28/20 Filing")).] The substance 5/28/20 Filing is limited to responses regarding the medical conditions contained in Plaintiff's 5/21/20 Motion. See CR 17-104, 5/28/20 Filing. Therefore, Plaintiff waived her privacy

12

interest to the extent her medical conditions are discussed in her 5/21/20 Motion, and, for the same reasons as stated above, the disclosure fell under the routine use exception of the Privacy Act.

Thus, the disclosure exceptions to the Privacy Act, codified at § 552a(b)(1) and (b)(3), are satisfied and Defendants are entitled to judgment as a matter of law with respect to Count I. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

## II. Constitutional Rights

Plaintiff alleges violations of the Fourth and Fourteenth Amendments in Count II of her Second Amended Complaint.

### A. Fourth Amendment

As another district court has summarized,

> it is unclear whether the Fourth Amendment protects informational privacy in medical records. Rather, controlling authority has discussed a constitutional right to informational privacy in medical records only under other constitutional provisions, such as the Fourteenth Amendment. See Whalen v. Roe, 429 U.S. 589, 604 n.32 (1977) (declining to address privacy interest in medical records under the Fourth Amendment); Tucson Woman's Clinic v. Eden, 379 F.3d 531, 551 (9th Cir. 2004) (citing Fourteenth Amendment cases when discussing informational privacy right); Yin v. California, 95 F.3d 864,

13

>>870 (9th Cir. 1996) (noting privacy right in medical records exists under the Fifth or Fourteenth Amendments).  Neither the Ninth Circuit nor the U.S. Supreme Court has stated that a Fourth Amendment right to privacy in medical records exists. . . .

Eckles v. Kingston, CASE NO. 3:17-CV-05492-RBL-DWC, 2019 WL 462780, at *3 (W.D. Wash. Jan. 4, 2019), *report and recommendation adopted*, 2019 WL 461371 (Feb. 6, 2019).  Regardless, Plaintiff had no privacy interest in the relevant medical records because she put her medical history at issue in the 5/21/20 Motion, and because the government had a legitimate penological interest in access to her records.  See, e.g., Equal Emp. Opportunity Comm'n v. Cheesecake Factory, Inc., CASE NO. C16-1942JLR, 2017 WL 3887460, at *7 (W.D. Wash. Sept. 6, 2017) (collecting cases); Cassells v. McNeal, No. 2:15-cv-0313 KJM AC P, 2016 WL 70329, at *3 (E.D. Cal. Jan. 6, 2016) (collecting cases).

**B.   Fourteenth Amendment**

To establish a Fourteenth Amendment substantive due process claim, "a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (citation omitted).  "The Due Process Clause takes effect only if there is a **deprivation** of a protected interest." Id. at 874 (emphasis in original).  However,

> "[i]f non-prisoners are deemed to waive their
> right to privacy in medical records and/or in the
> doctor-patient relationship upon the filing of
> civil suits due to the necessities attendant upon
> such suits, certainly prisoners can be deemed to
> similarly waive their necessarily more limited
> right to privacy upon the filing of grievances
> due to the necessities attendant upon such
> grievances." Caldwell v. Beard, No. 2:07-cv-727,
> 2008 WL 2887810, *7 (W.D. Pa. July 23,
> 2008). . . .

Thomas, 2010 WL 4024930, at *4. For the same reasons as stated with respect to Plaintiff's Fourth Amendment claim, Plaintiff waived any constitutional privacy rights that may exist in medical files maintained by the BOP by filing her 5/21/20 Motion and raising her medical condition as an issue.

Because there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law as to Count II, Defendants' Motion is granted as to Count II.

### III. Injunctive Relief

To the extent that Plaintiff's Motion requests injunctive relief, in addition to the relief identified in her Second Amended Complaint, the request is liberally construed as a motion for a preliminary injunction. See Pltf.'s Motion at 4. The motion for a preliminary injunction is denied on the basis that summary judgment is granted in favor of Defendants as to all of Plaintiff's claims in this case and thus Plaintiff cannot demonstrate likelihood of success.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment as There Is No Dispute of Material Facts Viewed in Light Most Favorable to Non-Moving Party, Defendants, filed May 26, 2021, is DENIED, and Defendants' Counter-Motion for Summary Judgment, filed June 10, 2021, is GRANTED.  The Clerk's Office is DIRECTED to enter judgment in favor of the BOP and the U.S. Attorney's Office on **August 24, 2021.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 10, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LEIHINAHINA SULLIVAN VS. FEDERAL BUREAU OF PRISONS, ET AL; CV 20-00269 LEK-KJM; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**